20-3451 from the Western District of Arkansas. United States v. Aldo Gastelum. Good morning, your honors. Good morning, your honors. Can everybody see and hear me okay? Yes. Thank you. May it please the court. Caleb Mason for the defendant and appellant in this case, Aldo Gastelum. I wanted to save two minutes for rebuttal and then I would like to divide my time approximately equally if I could between the two issues in this case. This is a case that presents two separate independent bases for reversing the order of the district court and suppressing the evidence in this case. I think it's an interesting case because on each of those two issues, I think this case presents a fact pattern that is really ready for a law school textbook on the limits of officers' ability to is the prolongation of the traffic stop without reasonable suspicion. I think most of the background law is well understood and not in dispute, so I will move quickly through that. The Rodriguez case from the Supreme Court in 2015 provides the starting point, a prolongation of a is unconstitutional. The only basis for prolonging a traffic stop at all, and I would emphasize the at all. There's no sort of de minimis window, leeway here. The only basis for prolonging it at all is reasonable suspicion. So in this case, the traffic stop was prolonged past the point at which the traffic-related activities were done. That was not in dispute by the parties. The of criticizing the first 15 minutes, but as I understand from your argument, we're starting at minute 15. I think so, Your Honor, and I wanted to focus on that. That is where the district court pegged this, and I think that there is ample support for that, that the type of activities that the officer was engaged in, running the background check for warrants, calling in a related activities. Now, at minute 15, this is where the district court sort of set this bar, and we can watch it on the video. The officer walks back to the traffic stop, to the vehicle, and the traffic stop portion is now completed. He says, we're about done here, and that is the point at which we start the reasonable suspicion analysis, because he then says, we're about done here, quick check, and he asks, do you have anything in the car, any luggage, quick check of that, and we're done. So he informs the... Let me just stop you there, because that may be the time we begin looking at the prolonging question, but everything he's learned in the first 15 minutes is part of the reasonable suspicion totality, right? Yes, Your Honor, and I would like to focus on what he learned, and the reasonable suspicion analysis, and we had a very thorough suppression hearing on this, and I laid it out for the court in the briefing. I think there were four key areas that he touched on. One was the use of a rental car. One was the claim that Mr. Gustelum was traveling to seek employment. Another was the display of military insignia on Mr. Gustelum's backpack and hat, and the fourth was the claim that California, Houston, and Chicago are all source cities, as he put it, that are inherently suspicious places to be coming from or going to. Now, what I laid out in the briefing was, point by point, on each of those areas, multiple cases from this court and other courts saying explicitly... Counselor, let me just stop you. Your brief struck me as going this point by point route, relying on Beck, a case that we have repeatedly limited to its facts because it went point by point and didn't follow the totality command of the Supreme Court precedents. Yes, Your Honor, and about Beck. So, I have Beck here, and I think it's an interesting read to go through because it is virtually identical in just about every respect to this case. And you won't find an opinion of mine in the umpteen years since Beck decided it. Well, Your Honor, I mean, I think what I am stuck with... Some of our colleagues have been more explicit about limiting it back to its facts. Right. So, this court has the power, I guess, sitting in Beck to overrule one of its cases or to limit it to its facts if the court wants to do that. I think even limited to its facts, Beck controls here. And let me move to what I think is... Yeah, Mr. Mace, I'd like you to focus on something I think you didn't really focus on in your briefing, which was, in your sort of point by point assessment, sort of this travel story. I mean, it's more than just disbelieving. I mean, I think the district court expresses more than just believing that he was going for work. It's sort of the entire where he started, where he landed in Houston, and how much time he had between Houston and Chicago. So, can you tell me why that in and of itself doesn't sort of send up a lot of, you know, sort of antennae? Yes, Your Honor. I think the first point is that the... And this is an important point for me, and I think it's important in the cases. Sending up antennae or, you know, red flags or the general hair on the back of your neck rising, that's not reasonable suspicion. And that's why in the suppression hearing, I asked about each of these specific issues. As far as his suspicions about the itinerary, he said, well, look, you have a rental agreement. The car is due back the next day. And I asked, do you agree, Trooper, that it is very easy to extend a rental agreement? And he said, yes, I do. The point about the totality, and I think that your question, Judge Kelly, reflects back on Judge Loken's question. This court addressed in Escobar, and that's the case that I relied on primarily. That's 389 F-3781. And the issue in Escobar with respect to these totality analyses is that you look point by point at the individual bricks, but the officer then has to mortar to glue them together. The officer must provide a reason, and it has to be a specific and articulated reason, why these individually nonsuspicious components aggregate to form some suspicious whole. And that's what I spent an entire day at the suppression hearing trying to elicit from this officer and just didn't get it. What we got instead was a repeated invocation of totality or aggregate. Every single observation the officer testified was not suspicious. But then he said, but in the aggregate, in the totality, they were. And I believe under Escobar, that's just not good enough. Moreover, I think for some of them, I would like this court to hold that the proud display of military insignia by a decorated military veteran is not a basis for all veterans. I don't think it's appropriate for an officer to use that as a basis for reasonable suspicion. I don't think that this officer was able to articulate anything to support his claim that there was an aggregate here. He relied extensively on... I don't think we've been certified as police officer trainers. You're asking us to decree as a matter of federal law what a police officer must be trained not to believe or credit from his experience. We just don't do that. Your Honor, I think what I would ask the court to do is to reach a holding that the observations here testified to by the officer do not amount to reasonable suspicion. And in reaching that holding, I think this court can give an explanation as to why. And I think that this court has repeatedly held, as have other courts around the country, that the type of source city's testimony on which the officer relied extensively is not sufficient to supply... I don't recall. I haven't read her opinion for a while. Did this record make an explicit credibility finding regarding officer Trooper Pettit? No, it was not an explicit credibility finding, and nor is there a fact in dispute where there was conflicting testimony. I mean, the facts are on the video. So, with respect to credibility, I think that issue arises in this case only in so far as the district court implicitly gave credit to the officer's 20 years... I guess 12 years as a police officer, 13 years as a jail guard. ...in her legal analysis of the sufficiency of the reasonable suspicion observations. So, I think that the credibility idea comes into play in the court's analysis of whether these observations were enough in the aggregate. Did the officer explain? And I want to, if I could, move in about 10 seconds to the next topic, but I think it is very significant that when asked specific questions about why he found any of these things suspicious, the officer was simply completely unable to do so. He could not answer except saying, although that's not suspicious, but in the totality, I was suspicious. And I think this court does have the power and does have the obligation, not as trainers of police officers, but as guardians of the Constitution, to say that's not enough. If you look at what reasonable articulable suspicion means, it means you've got to have something based in reason, and you've got to be able to articulate it. And he articulated each of these individual items, which standing alone might be innocent enough, but in looking at all of them, they gave rise to a suspicion that drug dealing may be afoot. That's really what he said. And aren't each of these factors, I mean, if you look at everything in the totality, you've got a lease in which he claims he's going to be doing something over a period of days, but the lease is for a day. You've got a period of time that he stays in Houston that's abnormally short and could not possibly have been long enough for him to do what he moved from Texas to points northward is not an entirely shocking observation to anyone who sat in district courts in our world here in the 8th Circuit. I mean, it seems like a lot of dope starts there and ends up in North Dakota and other places when I look at it. And I think if you put all that together, that has been articulated. Now you're saying that you've got to individually say that each individual piece is on its own evidence. And you may have an inarticulate explanation, but I think that it has been articulated, you know, in the sense that I say inarticulated, not perfectly stated, but we know what he was relying on. Your Honor, my response to that would be simply this. No, I do not think that that is enough. That it is, I fear that the trend that this officer was relying on and hoping that this court would endorse would be precisely that. That we all know what I'm talking about. We all know what, you know, what drug dealing looks like. And, you know, hey, I should be able to really point to anything I want, even if I concede that individually none of these are suspicious. I mean, he said an American flag on a backpack was an indicia of suspicion. I mean, there are some cases that talk about Bibles on dashboard being suspicious. And, in fact, a song by Cor Blund that points out that that's the best way to not get cited. Right? I mean, those things are out there in the culture. Your Honor, I believe the case with the Bible was the Townsend case, and I cited it because the court said the Bible cannot be, was not, and should not be treated as an item of reasonable suspicion. If I may, I would like to and that's asserted in Escobar. It comes from a number of other cases, including the Bumper case in the Supreme Court that I cited, and that is this. A citizen's acquiescence to a police officer's command is not voluntary consent. When a police officer makes a show of lawful authority, that's the language. A show of lawful authority and orders me to do something. I'm obligated to consent. The claim that... Counsel, does it matter that before there was an actual, that the trunk was actually open, putting aside the popping of it, before it was open, before anything was taken out, he says, yeah, that's fine. Your Honor, I would say no, because what was going... And why not? In the interim 25 seconds, my client was attempting to comply by looking for the trunk button and trying to push it, and the officer testified that's why he turned around, walked back, and he looked in the window. He saw my client looking for the trunk button and said, them things are kind of hard to find, huh? He was watching my client attempting to comply. And second reason why I don't think it's sufficient is once the command is given, the command is given. I don't think it can be retroactively converted into a request unless there is a retraction. There was no retraction here. A command is, do this, get out of the car and open the trunk. The only way to retract that would be to say, that was not a command. You have the freedom to say no. Now, as the prosecution points out, police officers don't have to tell people that they have the right to refuse a request for consent, and the reason that rule exists is because the background assumption in Sneklov v. Bustamante was that police officers were asking, not commanding. We cannot have a constitutional rule in which I am commanded to obey a command, and then I start to obey, and then the police officer says, oh, you don't care, you don't mind, do you? And the fact is the government says that I didn't resist, I didn't yell out, I complied calmly, that those are now going to be taken as evidence of voluntary consent. I think the government's position, and I put this in the reply brief strongly because I believe this strongly, I think that the government's position would create a constitutional rule or regime in which compliance in a calm way with officer commands in traffic stops could be taken in court as evidence of voluntary consent, and I don't think that the Constitution or any of us wants to go down that road. An officer may ask for consent, but that did not happen here. He commanded first, and only then waited 25 seconds and said, you don't care. I don't think there's any way to watch this video and say that that was voluntary request for consent that was voluntary consented to. I see that my time has expired. I apologize, your honors. I don't know if my two minutes were preserved or not. I would request that I be allowed some time for rebuttal, and I'd be happy to also answer more of the court's questions. Well, we'll see regarding rebuttal. Thank you. Ms. Butler. Good morning. May it please the court, I'm Assistant United States Attorney Sydney Butler, and I represent the United States today from the Western District of Arkansas. The defendant seeks reversal of the district court's order denying his motion to suppress the drugs seized in this case. His arguments primarily focused on attacking the officer's credibility here, so I want to focus on the facts that were actually relied upon by the district court in denying the motion to suppress. As to the first issue, whether the officer had reasonable suspicion to extend a traffic stop, here the district court credited the officer's testimony as to numerous suspicious factors observed in light of his 25 years in law enforcement. The officer testified that he believed the defendant's reason for traveling was suspicious. He testified it made no sense the defendant would go to the trouble and expense of flying in from California for a fruitless quest for military re-enlistment when he's already tried to be re-enlisted and told he's not eligible since the criteria would be consistent at any base. He observed that there was a bag and a hat with a flag and military insignia placed as a prop he believed to deflect his attention. He explained that this came about after the defendant volunteered information about his military service without even being asked, and he testified. Ms. Butler, I know when looking through the transcripts, I think the trooper was asked about why he felt that the insignia, the military insignia, was a prop, and he didn't really have any background training, as if I recall. Maybe he said, well, I've seen that before, but does it matter that the trooper didn't have sort of a reason or an explanation or training explanation of why he thought that was important? As I recall, he did say, and it may not have been at this exact time, that he has received some training in drug interdiction, and that he, I believe, said that he had received training specifically as to the insignia, and I don't recall exactly where it was. The transcript. Maybe I was looking in the wrong portion, and if it's there, I'll find it. Thank you. I don't know that he said he had, I can't recall if he said he'd worked a specific case with that, but I do recall him saying he had received training into that, and that it was something he knew from his training that drug traffickers may do to avoid detection. He also explained that there were inconsistencies with the rental car agreement and the defendant's story, and Judge Loken already mentioned this, but it's implausible the defendant, I mean, excuse me, Judge Erickson, it's implausible the defendant could visit bases in San Antonio, Houston, and Chicago with just a one-day rental of a vehicle. The trip to Chicago would take 15 or so hours at a minimum to even get there, and then it's also impossible that he was really visiting any place in Houston when the rental car agreement shows he rented the vehicle at 12, 12 p.m. at the Houston airport. He's then stopped just after 5 30 in Arkansas, so apparently he just rented the vehicle, drove straight towards Chicago when he was encountered. His explanation about doing anything in Chicago, I mean, excuse me, anything in Houston simply wasn't true. Those inconsistencies, I believe, were proper and meant that he articulated a reasonable suspicion viewed in totality of the circumstances. This is not anything like the Bett case, as the defendant claims. I think this is actually more similar to the recent Sanchez case, as well as Marilla Salgado, in which there were innocent items, a paint can and electrical wiring that this court agreed were suspicious in context with the officer's observations, as well as McCarty, in which in that case the officer observed that the short duration of the travel was suspicious in context. I will move to the second issue. If there are no other questions, it's a reasonable suspicion. This is the second issue. The district court appropriately found the defendant gave voluntary consent, and I do want to clear up one thing first from the defendant's brief. The district court did not make an explicit finding that there was a command made when the officer said, quick check of the trunk and we'll be done, and ask him to step out of the vehicle and open the trunk. The district court explicitly found that even if it was a command, that within seconds of that, the officer quickly retracted that and essentially cured any perceived command by asking for express consent. The trunk was not even opened or searched at that point until the defendant had agreed to the search. I'd like to ask you a question about those. I understand your explanation or description of the district court's opinion, but how is that not a command? Or maybe the better question is, how can that be perceived as a question? Well, that is what the officer testified, and I'm not arguing that it came across as a question. I completely acknowledge that it did not come across as a question, but the officer explained that he intended it to be a question and that he believed the defendant was actually agreeing at that point, but I think the district court was correct in finding that regardless of how it came across or was perceived, he essentially cured it when he, I mean within seconds, then says, before he's approached the trunk or moved, and defendant is still in the car at this point, there's been no change, it's not like he's detained in handcuffs at this point. He says, you don't mind if I look back there, do you? Ms. Butler, is that a thing, a cure? I mean, how does that work? You know, maybe a cure might be, oh wait a minute, you don't have to, I was telling you what to do, here's the question. But even if that's something an officer could do, tell me how you think this was what you're describing as a cure. Well, I do acknowledge that I could not find a case on point as to some, as the word the district court used, a retraction of that or a cure, but I do know this court has expressed that an officer can ask for consent multiple times, and that in cases such as Sedano, Medina, and Garcia-Garcia, there was not a perceived command, but there was a lot of confusion in what was being asked, and there was, and the court found that at the point when there was expressed request for consent, that it was understood what was being asked and evaluated the same factors that this court did under Salas. And so to answer your question, I don't know of a case that is on point as to whether it can be cured, but what I do think is the district court appropriately evaluated the full context of the conversation, and whether, and as I mentioned, maybe it'd be a closer call if the defendant had already gotten out of the car and the trunk was already opened, but I mean, this is within seconds of him making that statement. He's still in the same position, and the officer gave an expressed question of, you don't mind if I look back there, do you? And then not only that, he actually gave him a second chance to understand it as a question, because he repeated to him, that's okay with you? Okay. And he explained that he said that because it was loud on the interstate, he wanted to make sure he understood him, but he repeated that to him, and he said he responded in agreement as well. And then in looking at the surrounding factors after that, he also opened the trunk after that, which the officer signaled agreement. And then lastly, when he walked out of the car and stepped to the side, this is on the video, his appearance, his demeanor, his face, there's no sign of distress, hesitation. I believe it shows he was a willing participant in the search as well, as to his contemporaneous reaction to this. So the officer explained that he actually believed the defendant had been given multiple chances to express disagreement with the request for consent. And did anyone ask the officer how, well, I'm going to withdraw that question, because now I'm recalling the officer, the trooper testified that he thought what we're calling commands here for purposes of this argument were actually questions. So he thought he was questioning him all along, is that right? That is what he testified to, yes. And I completely acknowledge that the statement does not come across as a question. Here, the court's precedent explains that the inquiry is whether a reasonable officer would believe consent was given, and it's not whether the defendant subjectively believes he was acquiescing to a claim, as the defendant argues here. And the defendant's actions and his responses shows he knew it was a question, and he answered and agreed to it. The district court properly evaluated all the relevant factors under Salas in finding there was no evidence of coercion. For example, the court found this was a friendly encounter, the officer was polite, the court noted the defendant is intelligent, educated, he was an adult, he was sober, there's only one officer on the scene, it took place on the roadside during the day, the officer never raises his voice, never shows a weapon, the questioning here was not lengthy, the video just simply shows there's just no indicia of concern, fear, confusion, or anything like that. And this court does have the benefit of seeing all this on the video, and I believe the was that there, and viewed in totality, the defendant's will was not overborn here. As I mentioned, he had multiple opportunities to refuse, the officer testified to this, that he asked him these questions multiple times to make sure he understood that he was agreeing to it, and that had he voiced a no, he would not have done the search. And for those reasons, the district court appropriately found that consent was voluntary. I have nothing further, unless the court has any additional questions, I would just ask the district court's order be affirmed. Thank you. Mr. Mason, you used your time, and it's been thoroughly brief, but I'll give you a minute for rebuttal on the on the consent issue. You're on mute, I think. Yes, your honor, my first point would be to direct the court's attention to the page 11 of the district court's decision. The court, the district court wrote, the court recognizes that Trooper Pettit initially stated that the stop would be over after a quick check of the trunk, and therefore directed defendant to come on out for me and pop that trunk on your way out. Although these statements taken in isolation appear to be a command, and then the district court continued to say, but it was retracted. I think that that is a finding that it was a command. The legal issue here is, can you make a request for consent? Is that okay? You don't mind? You don't care? After giving the command, and that is the key issue, and if counsel is correct, there is no court that has decided this. It's a question of first impression for this court. What I'm asking this court to hold is that after giving a command, any future request for consent in the form of, you don't mind or you don't care, cannot be effective without an actual retraction of the command. Namely, you have the right to say, no, this was a 25 second delay. Do this, 25 seconds later, you don't mind, do you? I want to conclude, if I could, the analogy I think that I've made to a drill sergeant ordering the recruit to do push-ups, and then when one of them is slow getting down, saying, you don't mind, do you? That's the context we're in here. He's saying, hurry up. That's how it's reasonably conceived. Secondly, I think that the danger here is very pronounced of entering into a potentially sort of Missouri versus Siebert world of evading this consent requirement by doing a two-step where you first give a command, and then after the person has had a chance to absorb the command and begin to comply, you say, you don't mind, you don't care, and that would be very, very dangerous, and I think it was that danger that the United States Supreme Court recognized in the context of statements. I think we do see that here. This is an objective test for this court about the linguistic meaning and interpretation of these words and these statements, and I ask the court to reverse the district court. I thank you for your time. Thank you. The rebuttal was helpful. The argument was good. The case has been well-briefed.